977 So.2d 749 (2008)
COVELLI FAMILY, L.P., a Florida Limited Partnership, d/b/a Panera Bread, Appellant,
v.
ABG5, L.L.C., a Florida corporation, as successor in interest to Three Avenues, L.L.C., a Florida corporation; and Continental Casualty Company, an insurance company, Appellees.
No. 4D06-4298.
District Court of Appeal of Florida, Fourth District.
March 26, 2008.
*750 James P. Waczewski and Paul S. Jones of Luks, Santaniello, Perez, Petrillo & Gold, Orlando, for appellant.
Fred L. Kretschmer, Jr., of Brennan & Kretschmer, P.A., and Lisa D. Harpring, Vero Beach, for appellee ABG5, L.L.C.

ON MOTION FOR REHEARING
STEVENSON, J.
We grant appellant's Motion for Rehearing in part, withdraw our previous opinion, and issue the following in its place.
Tenant, Covelli Family, L.P., d/b/a Panera Bread, appeals the trial court's final judgment in favor of landlord, ABG5, L.L.C. After the leased property was damaged by two hurricanes, ABG5 gave Panera notice of its intent to terminate under the "damage or destruction" section of the lease. Panera thereafter initiated this action to contest ABG5's right to terminate. ABG5 counterclaimed for eviction. The trial court granted Panera a temporary injunction and, following a three-day bench trial, ruled that, although ABG5 had breached the relevant termination provision of the lease, ABG5 was justified in terminating because the breach was not material. The trial court awarded possession to ABG5 along with double rent damages. We affirm the trial court's ruling that ABG5 had the right to terminate the lease, but we reverse the double rent award.
In September of 2004, hurricanes Frances and Jeanne caused extensive structural *751 damage to the building that Panera was leasing from ABG5. In November of 2004, while it was assessing its damages for insurance purposes, ABG5 determined that, due to the expense of repairing the building and the extent of repairs needed, it preferred to demolish the building and reconfigure the property. ABG5 gave timely notice to Panera of its intent to terminate the lease pursuant to the "damage or destruction" section of the lease agreement. The applicable clause permits the landlord to terminate the lease within 120 days following a casualty if the leased building is so damaged or destroyed that it will require "the expenditure (as estimated by a reputable contractor or architect designated by Landlord in its sole and absolute discretion) of more than twenty percent (20%) of the full insurable value of such Building immediately prior to the casualty."
Shortly after receiving the termination notice from ABG5, Panera filed a complaint for declaratory and injunctive relief and breach of contract against ABG5. Panera argued, inter alia, that ABG5 had failed to establish proof that the cost to repair the hurricane damage to the building exceeded 20% of the building's insurable value. Finding that Panera had a substantial likelihood of success on the merits, the trial court issued a temporary injunction that prevented ABG5 from evicting Panera and permitted Panera to continue to operate and maintain possession of the premises for the duration of the suit on the condition that Panera post a bond of double rent. ABG5 filed a counterclaim for eviction and damages.
Panera argued at trial that ABG5 breached the lease agreement by failing to obtain an estimate from a "reputable contractor or architect" to substantiate its claim that the hurricane damage to the building exceeded 20% of its insured value within the 120-day notice period. ABG5 steadfastly maintained that its principal and sole owner, Scott Parker, who was not a licensed contractor but had substantial expertise in property maintenance and renovation, constituted a reputable contractor in conformity with the terms of the lease.
After considering the testimony and evidence from both sides, the trial court found that the repair estimate prepared by Parker did not constitute an estimate prepared by a "reputable contractor" as contemplated by the lease and that ABG5 had breached the notice provision by failing to obtain a qualifying contractor's estimate prior to exercising its termination right. By the time of trial though, both ABG5 and Panera had obtained estimates from independent experts. The trial court calculated that, even according to the figures most favorable to Panera, the repair costs exceeded 20% of the building's insurable value and, therefore, ABG5's failure to obtain an estimate by a reputable contractor or architect prior to sending the notice of termination to Panera was a harmless or technical breach because Panera was not damaged as a result of that failure.
The trial court entered final judgment in favor of ABG5 and granted the eviction as well as double rent for the period beginning thirty days from ABG5's notice letter, until the date that Panera vacated the premises following the trial court's order. The trial court awarded the double rent "in accord with the lease agreement."[1]
We have carefully considered all of the arguments submitted by both parties and write to address two principal issues. First, Panera maintains that the trial court *752 erred by concluding that ABG5's breach of the notice provision constituted a technical, rather than a material breach. Second, Panera maintains that the trial court erred by awarding double rent because Panera was in possession of the leased premises under a claim of right.

I

Whether trial court erred in holding ABG5 did not commit material breach
The interpretation of a lease agreement is a question of law and the applicable standard of review is de novo. Leisure Resorts, Inc. v. City of W. Palm Beach, 864 So.2d 1163, 1166 (Fla. 4th DCA 2003). In an appeal from a bench trial, "`the trial judges findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous.'" Taylor v. Richards, 971 So.2d 127, 129 (Fla. 4th DCA) (quoting Universal Beverages Holdings, Inc. v. Merkin, 902 So.2d 288, 290 (Fla. 3d DCA 2005)), review denied, 973 So.2d 1123 (Fla.2007). The issue of whether an alleged breach is vital or material is reviewed as a question of fact. Moore v. Chodorow, 925 So.2d 457, 461 (Fla. 4th DCA 2006); Beefy Trail, Inc. v. Beefy King Int'l, Inc., 267 So.2d 853, 858 (Fla. 4th DCA 1972) (citing 17A C.J.S. Contracts § 630, p. 1268). To constitute a vital or material breach, a party's nonperformance must "go to the essence of the contract." Id. at 857. A party's "failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach." Id.
The trial court, after finding that ABG5's delay in procuring an independent repair estimate constituted a breach of the notice provision of the lease, looked to see if the breach was material and concluded that it was a technical or immaterial breach. As the trial court reasoned, "the outcome would be the same. Even if they had had this same evidence at the time that they issued the notice, it would be the same as what [Panera's] up against now." Panera argues on appeal that the damages increased over time and that they would not have exceeded 20% of the building's insurable value if they were estimated within the 120 days after the hurricanes. The trial court did not make that finding.
Based upon the trial court's findings regarding the actual extent of the hurricane damage, we affirm the trial court's determination that any breach by ABG5 was merely technical and hold that the trial court's finding was not clearly erroneous. The trial court reasonably concluded that the vital issue here was whether the building required repairs exceeding 20% of the cost of the building, and that ABG5's failure to obtain an estimate from a contractor prior to sending the notice of termination did not go to the essence of the contract.
We reject Panera's argument that the termination clause at issue contained a "condition precedent" that conditioned ABG5's right to terminate upon its obtaining a damage estimate within the notice period. "As a general rule, conditions precedent are not favored, and courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication." *753 In re Estate of Boyar, 592 So.2d 341, 343 (Fla. 4th DCA 1992) (citing 17A Am.Jur.2d Contracts § 471 (1991)); see also Gunderson v. Sch. Dist. of Hillsborough County, 937 So.2d 777, 779 (Fla. 1st DCA 2006) (holding provisions of a contract will be considered conditions precedent or subsequent only where the express wording employs conditional language (citing In re Estate of Boyar)). Accordingly, "a mere stipulation or covenant in a contract will not be construed as a condition precedent, particularly where a forfeiture would result and where it appears a condition precedent, if desired, could have been provided for by express agreement." In re Estate of Boyar, 592 So.2d at 344. In the case at bar, the lease termination provision at issue does not expressly state that obtaining a contractor's estimate is a condition precedent to ABG5's right to terminate. Under the circumstances presented, in the absence of express conditional language, this court will not construe this stipulation to be a condition precedent to ABG5's express right to terminate pursuant to the lease, agreement. We conclude that ABG5's obligation to obtain a contractor's estimate prior to termination of the lease was simply one of the many promises and covenants contained within the overall lease contract.

II

Whether trial court erred in holding ABG5 was entitled to double rent
We hold that the trial court erred in ordering Panera to pay double rent to ABG5 because we find that Panera had a well-founded claim of possession and was not a "holdover tenant" under the terms of the lease. See Greentree Amusement Arcade, Inc. v. Greenacres Dev. Corp., 401 So.2d 915, 917 (Fla. 4th DCA 1981) (holding that where tenant remained on premises under a bona fide claim of right, tenant was not a "holdover tenant"). As in Greentree, the validity of the termination remained a genuine and justiciable issue "[u]ntil such time as the respective rights and obligations of the parties were fully litigated." Id. at 917. In this case, three sources of authority support Panera's right to continued possession of the premises: the trial court's temporary injunction, which prohibited ABG5 from evicting Panera from the premises[2]; the trial court's finding of breach on the part of ABG5, which confirmed the legitimacy of Panera's challenge to the termination; and ABG5's own delay in providing a repair estimate, which necessitated Panera's challenge to the validity of the termination in court.
Accordingly, we affirm the trial court's final judgment in favor of ABG5 and reverse the trial court's award of double rent against Panera.
Affirmed in part; reversed in part.
STONE, J., and TRAWICK, DARYL EVAN, Associate Judge, concur.
NOTES
[1] Section 30.03 of the lease governs "holding over." The section applies to a tenant that "hold[s] over in possession of the Demised Premises after the expiration of the Term, or earlier termination of this Lease, without the execution by Landlord and Tenant of a new lease agreement, or extension or renewal agreement." If the tenant holds over, the landlord can choose to convert the lease to a month-to-month tenancy and charge double rent, or "pursue any remedy available at law or in equity, or available pursuant to the terms hereof, or otherwise available . . . to obtain possession of the Demised Premises." We need hot address whether this provision was properly applied because we hold that Panera was not a "holdover tenant."
[2] We note that early in the litigation, ABG5's attorneys promulgated the misconception that the bond was issued under section 83.06, Florida Statutes, rather than under Rule 1.610(b). In its motion for enforcement of bond, conditions and motion for release of registry deposits, ABG5 incorrectly stated that "the court required that Panera Bread deposit with the Registry of the Court double rent for the premises in accord with [section] 83.06 of the Florida Statutes." Section 83.06, Florida Statutes (2005), does not apply where, as here, the landlord attempted to terminate the lease early. The statutory right of the landlord to demand double rent adheres only where the "tenant refuses to give up possession of the premises at the end of the tenant's lease." § 83.06, Fla. Stat, (emphasis added).