# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————

Case No. 5D23-1402
LT Case No. 2019-CA-000944

————————————————

KUN XIANG, M.D.,

    Appellant,

    v.

OCALA HEART CLINIC II, LLC,
WILLIAM F. DRESEN, M.D.,
JOSEPH R. ALONSO, M.D., VIJAY
K. MITTAL, M.D., SUREXA
CACODCAR, M.D., LAN LUO, M.D.
and TONG LIU, M.D.,

    Appellees.

————————————————

On appeal from the Circuit Court for Marion County.
Gary L. Sanders, Judge.

Tim W. Sobczak, of Dean, Mead, Egerton, Bloodworth, Capouano
& Bozarth, P.A., Orlando, for Appellant.

Michael R. Riemenschneider and Jeffrey L. DeRosier, of
Riemenschneider, Wattwood & DeRosier, P.A., Melbourne, for
Appellees.

February 2, 2024

SOUD, J.

Dr. Kun Xiang appeals the amended final judgment entered against him by the trial court in this contractual dispute arising from Xiang's membership in and employment with Ocala Heart Clinic. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm.

## I.

Xiang was a cardiologist at the Clinic who, after two years of employment, became a member physician. To become a member physician, Xiang entered into two different agreements with the Clinic: a Member Employment Agreement and an Operating Agreement,[1] the terms of which require they be read *in pari materia*. These two agreements provided, *inter alia*, that Xiang would buy 100 "membership units" in the Clinic for more than $300,000.

As was customary, the Clinic allowed Xiang to pay the purchase amount over a period of years. Xiang elected to pay monthly installments over a five-year term with a modest interest rate. The trial court received in evidence—without objection—an amortization schedule setting forth the amount of the debt and the terms of repayment, including the five-year term, the interest rate, and the monthly payment identifying amounts assigned to principal and interest. Xiang made numerous payments toward his buy-in.

Not long after buying in as a member physician, the relationship between Xiang and the Clinic soured. The growing discord centered in part around Xiang's assertion that the Clinic breached its obligation under the Operating Agreement to make a distribution to him to cover a 2017 tax liability.[2] The Member

---

[1] Xiang testified that prior to entering into these agreements, he read the agreements and consulted with counsel.

[2] All member physicians incurred a 2017 tax liability. While the Clinic does not seem to dispute its obligation to make a distribution to Xiang and all member physicians, the testimony before the trial court established it was the Clinic's longstanding

2

Employment Agreement required Xiang to give the Clinic ten days' written notice of the breach as an opportunity for the Clinic to cure. He did not do so.

Ultimately, Xiang resigned. The Member Employment Agreement required Xiang to provide the Clinic with 180 days' notice of his resignation. Again, he did not do so, resigning with approximately forty-five days' notice to the Clinic.

Xiang's resignation triggered the Clinic's repurchase of his membership units. Related thereto, the Operating Agreement provides:

> Upon the purchase of Units owned by Kun Xiang, M.D., **any balance owed to the Company by him on the Xiang Promissory Note shall be deemed indebtedness** . . . . **In the event the Purchase Price . . . is less than the amounts due under the Xiang Promissory Note, Kun Xiang, M.D.[,] shall be required to pay the Company any such difference**.

Whatever the cause, no promissory note was ever executed between Xiang and the Clinic. A clinic representative testified he believed "it was just an oversight."

Pertinent here, Xiang filed, as amended, a seven-count complaint. The Clinic answered and filed a two-count counterclaim: count I for breach of the Member Employment Agreement and count II for payment of the balance of the buy-in price required by the Operating Agreement.[3]

---

practice not to pay such a distribution and that members simply paid their respective tax liabilities.

[3] The issues we address in this opinion arise from the trial court's determinations on the Clinic's counterclaim. We affirm without further comment the trial court's decision on Xiang's amended complaint.

Following a two-day bench trial,[4] as to count I of the Clinic's counterclaim, the trial court found that Xiang breached the Member Employment Agreement but awarded no damages, concluding that any damages were speculative given the lack of evidence introduced at trial. The trial court found the Clinic to be the prevailing party on this count. As to count II of the Clinic's counterclaim, the lower court found that Xiang owed the balance of the buy-in price as required by the Operating Agreement and entered judgment in favor of the Clinic accordingly. Xiang's appeal followed.[5]

## II.

We review de novo a trial court's interpretation of a contract, which is, of course, a question of law. *See Smith v. Carlton*, 348 So. 3d 52, 56 (Fla. 5th DCA 2022). Importantly, however, "[i]n an appeal from a bench trial, the trial judge[']s findings of fact are clothed with a presumption of correctness on appeal, and these findings will not be disturbed unless the appellant can demonstrate that they are clearly erroneous."[6] *Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008) (internal quotations and citations omitted).

Further, the trial court's determination of the prevailing party for purposes of awarding attorneys' fees is reviewed for abuse of

---

[4] During trial, Xiang abandoned all but two counts of his amended complaint: count I seeking severance compensation and count VII seeking rescission and damages under the Florida Securities and Investor Protection Act.

[5] The Clinic did not cross appeal.

[6] When a reviewing court concludes that a trial court's finding, whether express or inferential, "is without support of any substantial evidence, is clearly against the weight of the evidence or that the trial court has misapplied the law to the established facts, then the decision is 'clearly erroneous'" and we "will reverse because the trial court has 'failed to give legal effect to the evidence' in its entirety." *Holland v. Gross*, 89 So. 2d 255, 258 (Fla. 1956).

discretion. *Hardeman Landscape Nursery, Inc. v. Watkins*, 290 So. 3d 574, 576 (Fla. 2d DCA 2020) (citing *Erhm Orthopedics, Inc. v. Edwards*, 260 So. 3d 559, 561 (Fla. 2d DCA 2019)).

A.

As to count I of the Clinic's counterclaim, the trial court found that Xiang breached the Member Employment Agreement by failing to (i) give the required ten-day written notice of breach and opportunity to cure and (ii) give 180 days' notice of his resignation. However, while the trial court found in favor of the Clinic it determined that "any award of damages would be speculative at best based upon the inadequacy of the evidence produced at trial." Since the Clinic failed to prove damages, Xiang argues the trial court erred in finding the Clinic was the prevailing party on this count. We disagree.

"[T]he party prevailing on the **significant issues in the litigation** is the party that should be considered the prevailing party for attorney's fees." *Moritz v. Hoyt Enters., Inc.*, 604 So. 2d 807, 810 (Fla. 1992) (emphasis added). Thus, "the fairest test to determine who is the prevailing party is to allow the trial judge to determine from the record which party has in fact prevailed on the significant issues tried before the court."[7] *Id.* A trial court is vested with broad discretion to determine which party has prevailed in the case before it. *Skylink Jets, Inc. v. Klukan*, 308 So. 3d 1048, 1051 (Fla. 4th DCA 2020) (citing *Sidlow v. Bowles Custom Pool & Spas, Inc.*, 32 So. 3d 722, 722 (Fla. 5th DCA 2010)).

It is certainly true that damages are an essential element to be proven by a plaintiff in a breach of contract action. Generally, "[t]o prove breach of contract, the plaintiff must establish (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Farman v. Deutsche Bank Nat'l Tr. Co., as Tr. for Long Beach Mortg. Loan Tr. 2006-05*, 311 So. 3d 191, 195 (Fla. 2d DCA 2020) (internal quotation and citation

---

[7] In *Moritz*, the Florida Supreme Court rejected the position that the prevailing party is the party who recovered an affirmative judgment. *Moritz*, 604 So. 2d at 809–10; *see also Skylink Jets, Inc.*, 308 So. 3d at 1051.

5

omitted). "Under Florida law, damages are an essential element of an action for breach of contract." *Id.* (citations omitted). However, proof of damages is not a condition precedent for a party asserting a breach of contract claim to be considered the prevailing party.

"Absent compelling circumstances,[8] . . . '[i]n a breach of contract action, one party must prevail.'" *Khodam v. Escondido Homeowner's Ass'n, Inc.*, 87 So. 3d 65, 66 (Fla. 4th DCA 2012). This is true even when, as in *Khodam*, a defendant is determined to have breached the contract but plaintiff is awarded no damages. *See id.* ("Despite the absence of damages, the finding that appellee breached the contract made appellant the prevailing party on the litigation's significant issues." (citing *Green Cos., Inc. v. Kendall Racquetball Inv., Ltd.,* 658 So. 2d 1119, 1121 (Fla. 3d DCA 1995))).

In the case *sub judice*, the trial judge found that the Clinic proved Xiang breached the Member Employment Agreement by failing to give the required ten-day written notice of breach and 180 days' notice of his resignation. Thus, even though the trial court declined to award damages, the trial judge was well within his discretion to determine the Clinic prevailed. The significant issue in this count of the counterclaim was whether Xiang breached the Member Employment Agreement. The trial court found he did, and that determination is not clearly erroneous. Under Florida law, this conclusion is sufficient for the Clinic to be considered the prevailing party on Count I of its counterclaim.

---

[8] An example of such compelling circumstances would be where a contract fails as a result of fault by both contracting parties. In such an instance "an award of prevailing party fees would not be appropriate because it would result in an unjust reward to a party whose conduct caused the failure of the contract." *Hardeman Landscape Nursery, Inc.*, 290 So. 3d at 576 (internal quotations and citation omitted). Additionally, where neither party proves a breach of the contract, an award of fees may not be warranted. *Id.* (citing *Lasco Enters., Inc. v. Kohlbrand*, 819 So. 2d 821, 826 (Fla. 5th DCA 2002)).

B.

As to the judgment entered in favor of the Clinic on Count II of its counterclaim, Xiang argues that the trial court erred in finding in favor of the Clinic and entering judgment for the amount he still owed for his buy-in to the membership. Specifically, Xiang asserts that the Clinic cannot enforce the debt against him after he left the Clinic because the Operating Agreement contemplates "amounts due under the Xiang Promissory Note"—a promissory note that does not exist. We disagree.

Importantly, the existence of the debt incurred by Xiang to purchase his membership in the Clinic was not disputed at trial. As the trial court found, and as the record before us makes clear, Xiang agreed to the buy-in amount. The trial court received into evidence at trial—without objection—the amortization schedule for Xiang's buy-in, which identifies the buy-in amount, the five-year payment period, the interest charged, and the portions of each payment assigned to principal and interest. Xiang's own testimony confirmed he was provided a copy of the amortization schedule prior to becoming a member and agreed to it. Indeed, Xiang made numerous payments toward the buy-in as set out in the amortization schedule prior to his resignation from the Clinic.

The parties' failure to execute a promissory note as contemplated by the Operating Agreement is not fatal to the existence of the debt Xiang owed to the Clinic. "A promissory note evidence[s] a debt and specif[ies] terms under which one party will pay money to another. But a promissory note is not required to create a debt . . . ." *In re Luna Devs. Grp., LLC*, 618 B.R. 595, 615 (Bankr. S.D. Fla. 2020) (internal quotation and citation omitted). Thus, while a promissory note evidences a debt, it does not constitute the debt itself. *See Price v. Mize*, 628 P.2d 705, 706 (Okla. 1981) ("A promissory note is an unconditional written promise, payable to order or to bearer, signed by the maker, in which the maker agrees to pay a fixed sum of money on demand or at a definite time. A debt is a sum of money due upon either an express or an implied contract. The promissory note is not a loan or a debt, it is only the evidence of indebtedness from the maker to

the payee.").[9] Indeed, in foreclosure cases, the absence of a promissory note does not render a mortgage unenforceable. *See Thomas v. Thomas,* 96 So. 2d 771, 773 (Fla. 1957) (finding the mere absence of a promissory note evidencing a debt did not prohibit a holding that the transaction was a mortgage arrangement); *Crum v. U.S. Fid. & Guar. Co.,* 468 So. 2d 1004, 1007 (Fla. 1st DCA 1985) (a one-month period between the execution of mortgage and the corresponding promissory note does not render the mortgage unenforceable for lack of consideration); *see also First Am. Bank of N.Y. v. Sloane,* 651 N.Y.S.2d 734, 735 (1997) (finding a mortgage is not invalidated by the absence of the note or bond manifesting the debt).

As the want of a promissory note does not eviscerate the existence of the buy-in debt, it follows then that the lack of a promissory note does not preclude enforcement of the debt against Xiang. The Clinic's legal right to collect the remainder of the buy-in price after Xiang's resignation emanates from the Operating Agreement. Specifically, as to the Clinic's redemption of Xiang's membership units, the Operating Agreement provides:

> Upon the purchase of Units owned by Kun Xiang, M.D., **any balance owed to the Company by him on the Xiang Promissory Note shall be deemed indebtedness** . . . . **In the event the Purchase Price . . . is less than the amounts due under the Xiang Promissory Note, Kun Xiang, M.D.[,] shall be required to pay the Company any such difference**.

Thus, the balance Xiang owed for the buy-in remained an indebtedness even after his resignation. The precise balance owed by Xiang was evidenced by the amortization schedule stipulated into evidence during trial and the payments Xiang made before his resignation. And since the amount still owed by Xiang exceeded

---

[9] This can be further seen when considering the definition of "promissory note" in the context of Florida's Uniform Commercial Code, which defines a promissory note as "an instrument that evidences a promise to pay a monetary obligation . . . ." § 679.1021(1)(mmm), Fla. Stat. (2018).

8

the purchase price to be paid by the Clinic to redeem his membership units,[10] the Operating Agreement makes clear he remained liable for the unpaid balance of the buy-in.

### III.

Accordingly, for these reasons, the Amended Final Judgment of the trial court is AFFIRMED.

It is so ordered.

HARRIS and PRATT, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

---

[10] The Operating Agreement sets forth a method for determining the purchase price the Clinic must pay to redeem a transferring member's membership units. Because of the brevity of Xiang's tenure as a member, the Clinic's purchase price to redeem his membership units was zero.