# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-0193
_____

LINDA O'DONNELL,

    Appellant,

    v.

JAMES E. LEE, II, and PAIGE J.
LEE,

    Appellees.

_____

On appeal from the Circuit Court for Franklin County.
Jonathan Sjostrom, Judge.


June 5, 2024


WINOKUR, J.

Linda O'Donnell ("O'Donnell") executed a contract with James and Paige Lee ("the Lees") for the sale of real property located on St. George Island. O'Donnell was the buyer; the Lees were the sellers. Less than 30 days after execution, O'Donnell sued the Lees for specific performance. After a bench trial, the lower court ruled in favor of the Lees. O'Donnell appeals that decision. For the reasons that follow, we reverse the lower court's decision and award appellate attorney's fees to O'Donnell.

# I

Jerry Ison ("Ison") served as the property manager for the Lees' house on St. George Island. Jeff Galloway ("Galloway") served as the real estate broker for the transaction at issue. Barbara Iman ("Iman") served as Galloway's business manager.

According to the Lees, they decided to sell their house because they faced six-figure medical bills. So, in April 2021, they reached out to Ison for help selling their house. Ison then contacted Galloway to inquire about potential buyers. Galloway then spoke with O'Donnell, who submitted an offer. Representing both sides to the transaction, Galloway prepared a real estate contract for the Lees and O'Donnell to sign.

On April 19, 2021, the parties executed the "As Is" Residential Contract for Sale and Purchase of the St. George Island property ("the contract"). The contract listed the purchase price at $1.450 million with an initial deposit of $10,000 due within three days of execution. The contract identified the closing date as May 31, 2021. The contract authorized specific performance in the event of a default by the sellers. It also authorized prevailing party attorney's fees.

The contract stated that the escrow funds would be delivered to an escrow agent "TBD by seller." Galloway explained at trial that he listed the escrow agent "TBD by seller" because "in this offer, we asked the seller to select and pay for the title search and title insurance so that's why I didn't know who they wanted to use." Galloway did not believe he had the authority to identify an escrow agent for the transaction. Indeed, in their response to interrogatories, the Lees admitted that, under the express terms of the contract, they alone had the authority to identify the escrow agent.

On April 21, 2021, a Commercial Portfolio Manager with Synovus Bank in Tallahassee signed a letter stating: "Linda O'Donnell has adequate funds and creditworthiness with Synovus Bank to purchase [the property on St. George Island]." O'Donnell, then, sent an email to Iman and Galloway, requesting a copy of the contract.

The following day, Iman sent an email to O'Donnell stating: "Attached is the fully executed contract for . . . your records. I'll check and send you the title agent name in a minute for your escrow check." However, Iman never followed up with O'Donnell to identify the escrow agent.

After learning that insurance would cover a lot of their medical bills, James Lee "convinced [Paige Lee] that we did not need to sell this house from a financial standpoint." Appellees then signed a Notice of Termination letter, which read as follows:

April 22, 2021

Jeff Galloway Real Estate
45 E. 1st Street
St. George Island, FL 32328

RE:     Notice of Termination

Dear Jeff:

Please consider this correspondence formal notice of termination of the proposed contract for the sale of [the property on] St. George Island, Florida.

Unfortunately, and with much regret, our family is enduring personal and medical issues that make such a transaction impossible at this time. *This proposed deal will not close*. We wish to inform all parties now so they may pursue other opportunities. We appreciate your understanding during this difficult time.

If you have any questions, please feel free to contact us.

Very truly yours,
James E. Lee II
Paige S. Lee

(emphasis supplied).

3

The termination letter did not mention O'Donnell's failure to place funds in escrow. During his trial testimony, James Lee explained the omission as follows: "I didn't think that was necessary and I didn't want to ruffle Ms. O'Donnell's feathers because my full expectation was she was going to go buy another house, so I didn't want to say . . . you breached." James Lee thought that, after receiving the letter, O'Donnell would "walk" away from the deal and purchase another property on St. George Island.

According to O'Donnell, Ison sent Galloway a picture of the termination letter on April 22, 2021; and, Galloway sent a picture of the letter to O'Donnell that same day. James Lee testified that he did not send the termination letter until April 23, 2021. However, his testimony conflicts somewhat with the Lees' response to interrogatories, wherein the Lees repeatedly admitted that "legal notice of termination was given by [them] to [their] Real Estate Agent on April 22, 2021, via certified mail."

On April 23, 2021, James Lee sent an email to Jeff Galloway with the subject line "Termination letter." The Notice of Termination letter was attached to the email, which was Galloway's first direct communication from the Lees. When O'Donnell spoke with Galloway over the phone about the termination letter, Galloway said "we don't know who their escrow agent is going to be, [so] send the money to Kristy [Banks]."

At 9:56 a.m., Iman sent an email to Kristy Banks ("Banks") stating: "Please start a file on this contract and email Linda O'Donnell wiring instructions for her escrow deposit."

At 10:36 a.m., Banks' assistant sent an email to O'Donnell that included "wiring instructions for sending Escrow in connection with purchase of the [St. George Island] property."

At 11:34 a.m., O'Donnell sent an email to Chattie Winton with Synovus Bank and Lisa Burns with Gulfvacay, stating: "another $10,000 wire please." O'Donnell sent the email "to effectuate a wire transfer for the purpose of posting the deposit under the contract."

4

Sometime between 11:34 a.m. and 5:55 p.m., O'Donnell transferred $10,000 from her checking account to Banks as the escrow agent for the real estate transaction.

At 5:55 p.m., Banks sent an email to Iman, with O'Donnell and Galloway carbon copied on the email.

On April 26, 2021, Banks signed an Escrow Deposit Receipt Verification, indicating receipt of $10,000 in escrow funds on April 23, 2021.

On April 29, 2021, O'Donnell (through counsel) sent her first demand letter to the Lees, demanding that the Lees "retract [their] April 22, 2021, letter and close on the contract according to its terms."

On May 6, 2021, O'Donnell (through counsel) sent her second demand letter to the Lees, demanding that the Lees "honor the contract and close according to its terms."

On May 17, 2021, O'Donnell filed a Complaint for Specific Performance, requesting that the trial court direct the Lees "to perform the Contract and to award . . . reasonable attorney fees." Citing *Sisco v. Rotenberg*, 104 So. 2d 365, 375 (Fla. 1958), O'Donnell asserted that, at all times, she "was ready, willing and able to pay" the purchase price for the St. George Island property. She later amended her complaint, seeking specific performance *and* lost profits and rent.

The Lees answered and raised an affirmative defense. In pertinent part, the Lees asserted that O'Donnell "had not complied with her obligations under the contract [because she] failed to pay the deposit required by the contract by the deadline required by the contract." O'Donnell replied to this affirmative defense by asserting that she "[was] not responsible for any delay in the delivery of the deposit caused by the wrongful and willful refusal of [the Lees] to designate the escrow agent in a timely manner."

On October 13, 2021, the Lees filed a response to interrogatories. In that response, the Lees admitted to the following facts:

5

- "The terms of the proposed contract specify that the escrow agent was 'TBD' by Defendants."

- "Selection of escrow agent was *a vital term* of the proposed contract . . ."

- "Selection of escrow agent *was not made by Defendants* before proposed contract termination."

- "The proposed contract was terminated *before Defendants were required to determine an escrow agent.*"

- "The earnest money was 'supposedly' deposited by Plaintiff only after legal notice of termination was given by Defendants . . . *to an escrow agent not determined by Defendants, outside the terms of the proposed contract.*"

- "Neither Plaintiff nor Defendants' Real Estate Agent have identified 'supposed' escrow agent to Defendants. Pursuant to proposed contract, *it was not Plaintiff's or Defendants' Real Estate Agent's determination to make.*"

(emphases supplied). At least 25 times in the 9-page response, the Lees admitted that Galloway was "Defendants' Real Estate Agent." And the first time that expression appeared in the response, the Lees highlighted that description of Galloway by emphasizing the text in bold to read: "**Defendants' Real Estate Agent**."

On December 9, 2021, the lower court conducted a one-day bench trial. During opening statements, O'Donnell asserted that the Lees "breached their contractual obligation to identify an escrow agent and thereby prevent[ed] [O'Donnell] from making the initial deposit in a timely fashion." The Lees asserted that, due to the time is of the essence clause of the contract, O'Donnell's failure to place the funds in escrow "[was] a material breach of the contract."

During her closing argument, O'Donnell reiterated that the Lees—and the Lees alone—had the contractual obligation to identify the escrow agent:

> The contract by its plain terms required the sellers to identify the escrow agent. It wasn't the responsibility of the realtor/broker to identify the escrow agent according to the plain terms of the contract. It wasn't Linda O'Donnell's responsibility to identify the escrow agent.

> The contract by its plain terms says that the escrow agent was to be determined by the sellers. They did not do so in a timely fashion thereby preventing my client from making the initial deposit.

According to O'Donnell, the Lees' failure to identify the escrow agent prevented O'Donnell from satisfying her obligations under the contract: "The only reason this case, this contract has not closed is because the sellers prevented [O'Donnell] from performing."

During their closing argument, the Lees pointed to O'Donnell's ability to identify an escrow agent for herself on April 23, 2021, as proof that "it's just not true that the sellers' inaction prevented the buyer from posting the deposit." Of note, this argument conflicts with the Lees' interrogatory response, in which they repeatedly admitted that:

> The earnest money was "supposedly" deposited by Plaintiff only after legal notice of termination was given by Defendants to Defendants' Real Estate Agent on April 22, 2021, via certified mail and on April 23, 2021, at 9:50 A.M. via email, to an escrow agent not determined by Defendants, *outside the terms of the proposed contract*.

(emphasis supplied).

According to the Lees, "the first breach in [the] contract was the Plaintiff's breach which justified the Defendants' termination."

7

As to the "TBD by the seller" language of the contract, the Lees argued that it was Galloway's fault that they failed to identify an escrow agent:

> [A]nd the evidence that the Court has heard is that Mr. Galloway was, whether he had a duty to or not, may be the subject of a different action on a different day, but he, in fact, did not take any affirmative steps to assist either of these parties quite frankly in, in getting, in getting this transaction, you know, postured where, where it needed to be.

In short, the Lees blamed Galloway for their failure to perform.

In ruling for the Lees, the lower court concluded that "there was barely a contract here" because "the person in the middle of this contract, Mr. Galloway, never in his entire life spoke to the person who was supposed to be his client, which is . . . the Lees." As a result, the trial court ruled "that the terms of the contract . . . can't be construed against" either party.

As to any repudiation of the contract by the Lees prior to the expiration of the three-day escrow identification period, the trial court determined that the date of the termination letter did not matter: "[S]o the fact that he wrote a letter on the 22nd, even if, *even if the intention was there to terminate*, the letter is not effective until sent in my, in my view and so that's not a, that's not a breach." (Emphasis supplied.) Ultimately, the trial court found that "[t]here wasn't a breach by the Lees before the three days ran."

In the one-page written order that followed, the lower court denied O'Donnell's request for specific performance because O'Donnell "failed to comply with her contractual obligation to pay the initial deposit required by the contract by the deadline required by the contract."

8

## II

In her initial brief, O'Donnell essentially raises three arguments why the trial court erred when it ruled in favor of the Lees:

- "The lower tribunal erred by ruling that Appellees did not breach the sales contract prior to escrow deposit deadline; Appellees had a duty to identify the escrow agent and their failure to do so wrongfully prevented Appellant from timely complying with the terms of the escrow provision."

- "Appellees also waived strict enforcement of the time is of the essence provision as it relates to the escrow deposit."

- O'Donnell "is entitled to specific performance of the contract [as well as] lost rents and profits."

In their answer brief, the Lees essentially raise three arguments why the trial court did not err when it ruled in their favor:

- "The trial court correctly found the buyer materially breached the contract by failing to tender the deposit before the contract's deadline."

- "Sellers did not waive the 'time is of the essence' clause when they terminated the contract the day after the deposit was due without referencing that clause in the termination letter."

- "The trial court did not abuse its discretion in denying specific performance and denying buyer's related claim for lost rents and profits."

The Lees also raised the following sub-arguments in support of their main argument that O'Donnell breached the contract first:

9

- "Missing a payment deadline when the contract says time is of the essence is a material breach. But the selection of the escrow agent is a minor and administrative provision of the contract. The failure to comply with a minor, administrative, and nonessential provision of the contract does not constitute a material breach."[1]

- "Buyer did not try to contact Sellers about the identification of the escrow agent. Nor did Buyer's broker."[2]

- "Buyer could have paid the deposit on time without Sellers designating an escrow agent."[3]

---

[1] The Lees' claim that identification of the escrow agent was "a minor and administrative provision of the contract" conflicts with their response to interrogatories, wherein the Lees admitted that "[s]election of escrow agent was a vital term of the proposed contract."

[2] The Lees' characterization of Galloway as the "Buyer's broker" conflicts with their response to interrogatories, wherein the Lees admitted at least 25 times that Galloway was "Defendants' Real Estate Agent."

[3] The Lees' claim that O'Donnell "could have paid the deposit on time without Sellers designating an escrow agent" conflicts with their response to interrogatories, wherein the Lees admitted:

> The earnest money was "supposedly" deposited by Plaintiff only after legal notice of termination was given by Defendants to Defendants' Real Estate Agent on April 22, 2021, via certified mail and on April 23, 2021, at 9:50 A.M. via email, *to an escrow agent not determined by Defendants, outside the terms of the proposed contract*.

(emphasis supplied).

## III

The trial court committed reversible error when it determined that O'Donnell—not the Lees—breached the contract at issue in this case. As highlighted above, the Lees admitted to the following:

- Identification of an escrow agent was a material term of the contract;

- They alone were responsible for identifying an escrow agent; and,

- They failed to identify an escrow agent.

Therefore, by their own admission, the Lees committed a material breach of the contract.[4]

With regard to a breach of contract, the terms "vital" and "material" are synonymous. *See Beefy Trail, Inc. v. Beefy King Intern., Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972) ("To constitute a *vital or material* breach a defendant's nonperformance must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part." (emphasis supplied)).

As a general rule, "[t]he issue of whether an alleged breach is vital or material is reviewed as a question of fact." *Covelli Fam., L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008); *see also Haiman v. Fed. Ins. Co.*, 798 So. 2d 811, 811 (Fla. 4th DCA 2001) ("[M]ateriality is a question of fact to be determined by the trier of fact.").

---

[4] Because the Lees admitted to a material breach of the contract, we do not address whether the Lees should have been given additional time to perform; nor do we address whether O'Donnell should have been given additional time to place the necessary funds in escrow. *See generally Lance v. Martinez-Arango*, 251 So. 2d 707, 708–09 (Fla. 3d DCA 1971).

Following a bench trial, we ordinarily review a trial court's findings of fact for competent, substantial evidence. *See U.S. Bank Nat'l Ass'n as Trustee for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2006-CB8 v. Qadir*, 342 So. 3d 855, 859 (Fla. 1st DCA 2022) (citing *MTGLQ Inv'rs, L.P. v. Moore*, 293 So. 3d 610, 615 (Fla. 1st DCA 2020)).

In this case, however, the Lees are bound by their admission that they committed a material breach of the contract. *See Holub v. Holub*, 54 So. 3d 585, 587 (Fla. 1st DCA 2011) ("'A party is bound by his or her admissions under oath, . . . [and] also bound by factual concession made by the party's attorney before a judge in a legal proceeding.'" (quoting *Dicus v. Dist. Bd. of Trustees for Valencia*, 734 So. 2d 563, 564 (Fla. 5th DCA 1999))).

Therefore, only a question of law remains. *See Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976) ("The question of whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact, but under some circumstances, *particularly where the facts are admitted*, it may well be a question of law." (emphasis supplied)).

Accordingly, we hold that the trial court committed reversible error when it concluded that O'Donnell "failed to comply with her contractual obligation to pay the initial deposit required by the contract by the deadline required by the contract." As their admission clearly indicates, the Lees—not O'Donnell—committed the material breach in this case.

On remand, the lower court can decide the appropriate remedy. *See generally Jacobs v. Berlin*, 28 So. 2d 539, 540 (Fla. 1946) ("The matter of decreeing specific performance of a contract to convey land is one in which the court may exercise its sound judicial discretion and the enforcement is not a matter of course like the right to enforce a lien or judgment."); *see also Palm Lake Partners II, LLC v. C & C Powerline, Inc.*, 38 So. 3d 844, 851 n.9 (Fla. 1st DCA 2010) ("Specific performance may be granted only when (1) the plaintiff is clearly entitled to it, (2) there is no adequate remedy at law, and (3) the judge believes that justice

12

requires it." (quoting *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. 3d DCA 2005))).

IV

The trial court erred when it found that O'Donnell—rather than the Lees—committed a material breach of the contract. On remand, the lower court can determine the appropriate remedy for the Lees' breach.

REVERSED.

LEWIS and ROBERTS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Thomas M. Shuler of the Law Offices of Thomas M. Shuler, P.A., Apalachicola; Kayla Scarpone of Carr Allison, Tallahassee, for Appellant.

James M. Durant, Jr. of Boyd & Durant, P.L., Tallahassee, for Appellees.